**ZIMMERMAN REED LLP**
Caleb Marker (SBN 269721)
caleb.marker@zimmreed.com
Flinn T. Milligan (SBN 323042)
flinn.milligan@zimmreed.com
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780

Ryan J. Ellersick (SBN 357560)
ryan.ellersick@zimmreed.com
14648 North Scottsdale Road, Suite 130
Scottsdale, AZ 85254
Tel: (480) 348-6400

Hannah Brown (SBN 337592)
hannah.brown@zimmreed.com
80 S 8th St., Ste 1100
Minneapolis, MN 55402
Tel: (612) 341-0400

*Attorneys for Plaintiff and the Putative Classes*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| M.H., individually, and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DONE GLOBAL, INC.,<br><br>Defendant. | Case No. 24-cv-03040-RFL<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT DONE GLOBAL INC.'S MOTION TO DISMISS COMPLAINT** |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................ 1

II. STATEMENT OF ISSUES ........................................ 1

III. FACTUAL BACKGROUND ........................................ 1

IV. ARGUMENT ........................................ 3

A. Plaintiff Adequately States a Claim under the California Invasion of Privacy Act........ 3

1. Done Aided the Tech Companies to Intercept the Communications of Plaintiff and Class Members. ........................................ 4

2. Done's Challenges to the CIPA Claim are Unpersuasive. ........................................ 7

B. Plaintiff Adequately States Claims for Invasion of Privacy. ........................................ 9

C. Plaintiff States a Claim for Brach of Confidence. ........................................ 11

V. CONCLUSION ........................................ 12

# TABLE OF AUTHORITIES

**Cases**

*A.J. v. LMND Med. Grp., Inc.*,
2024 WL 4579143 (N.D. Cal. Oct. 25, 2024)....5, 8

*A.S. v. SelectQuote Ins. Servs.*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024)....8

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)....11

*Berkla v. Corel Corp.*,
302 F.3d 909 (9th Cir. 2002)....11

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024)....4

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024)....7

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023)....7, 10

*Doe v. Eating Recovery Ctr. LLC*,
2024 WL 2852210 (N.D. Cal. June 4, 2024)....6, 7

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979(9th Cir. 2017)....4

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
122 F.3d 1211 (9th Cir. 1997)....11

*Fink v. Goodson-Todman Enterprises, Ltd.*,
9 Cal. App. 3d 996 (Ct. App. 1970)....11

*Garcia v. Build.com, Inc.*,
2024 WL 1349035 (S.D. Cal. Mar. 29, 2024)....5

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....4, 9

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)....4, 8

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ........ 11

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) ........ 10

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 9

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) ........ 8, 9

*Jones v. Tonal Sys., Inc.*,
2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) ........ 8

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ........ 5

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ........ 6, 7

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) ........ 10

*Ribas v. Clark*,
38 Cal. 3d 355, 696 P.2d 637 (1985) ........ 3

*Smith v. YETI Coolers, LLC*,
2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) ........ 4, 5, 6

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ........ 7, 9, 10

*Toy v. Life Line Screening of Am. Ltd.*,
2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) ........ Passim

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 4

**Statutes**

Cal. Penal Code. § 630 ........ 4

Cal. Penal Code § 631(a) ........ 4, 6, 7, 8

## I. INTRODUCTION

California law prohibits third-party tech companies from eavesdropping on electronic communications that occur when a person accesses a healthcare provider's website to inquire about personal health issues. A healthcare provider that knowingly aids and assists a third-party tech company to eavesdrop on such communications likewise violates California law. In this case, Done Global, Inc. ("Done"), a nationwide telehealth provider that specializes in treating attention deficit hyperactivity disorder ("ADHD"), installed on its website tracking tools from multiple third-party tech companies, including Meta, TikTok, Snapchat, and Google. Done deployed the tracking tools for the purpose of tracking the activity of its website visitors and retargeting those individuals with online advertising. But because the tracking tools allowed the third-party tech companies to intercept and read the contents of a user's communications with Done's website in real time—including inquiries concerning ADHD symptoms and treatment options—Done's conduct violated California law. Done's motion to dismiss should be denied.

## II. STATEMENT OF ISSUES

The following matters are at issue in Done's Motion to Dismiss and the instant Response in opposition:

1. Whether Plaintiff has sufficiently stated a claim for relief under the California Invasion of Privacy Act;
2. Whether Plaintiff has sufficiently stated claims for Invasion of Privacy under the California Constitution and common law;
3. Whether Plaintiff has sufficiently stated a claim for Breach of Confidence; and,
4. Whether, if necessary, leave to amend Plaintiff's complaint should be granted.

## III. FACTUAL BACKGROUND

Done is a provider of online mental healthcare with an emphasis on treating individuals with ADHD. Compl. ¶ 2.[1] Done operates a website, https://www.donefirst.com/, (the "website") where patients and prospective patients can take health assessments, schedule appointments with medical

[1] All citations to ¶ refer to Plaintiff's Class Action Complaint, Dkt. 1.

providers, and research symptoms and treatment options for ADHD. *Id.* According to its website, "Done is dedicated to serving individuals who otherwise may not be comfortable seeking care for ADHD in person due to stigma around ADHD treatment or may not be able to access care due to cost or availability." *Id.*

In July 2023, federal regulators sent a letter to approximately 130 healthcare providers warning against the use of online tracking tools that cause unauthorized disclosures of health information to third parties. ¶ 26. The letter highlighted the "risks and concerns about the use of technologies, such as the Meta/Facebook pixel and Google Analytics, that can track a user's online activities," and warned about "[i]mpermissible disclosures of an individual's personal health information to third parties" that could "result in a wide range of harms to an individual or others." *Id.* According to the letter, "[s]uch disclosures can reveal sensitive information including health conditions, diagnoses, medications, medical treatments, frequency of visits to health care professionals, where an individual seeks medical treatment, and more." *Id.*

In February 2024, the FTC took enforcement action against one of Done's competitors, Cerebral Inc., for, among other things, providing "sensitive information of nearly 3.2 million consumers to third parties such as LinkedIn, Snapchat and TikTok by using or integrating tracking tools on its website or apps." ¶ 27.

Despite these warnings from federal regulators, Done deployed multiple tracking tools on its website that disclosed the private health information of its users to some of the largest technology and advertising companies in the world, including Meta, TikTok, Snapchat, and Google. *See* ¶¶ 3, 7. The express purpose for using the tracking tools is to track and disclose to third parties a user's activities on a website, identify that individual user, and retarget that individual with advertising related to the information they communicated while on the website. ¶¶ 53-55, 74, 77, 81. The tracking tools work by causing the user's browser to secretly duplicate and transmit to the third-party tech companies every communication the user has with the Done website in real time. ¶¶ 51-52, 62, 83, 176. In this way, the tracking tools function much like a traditional wiretap. ¶ 53.

For example, when a person visits the Done website and navigates to the "Diagnosis" page, the tracking tools simultaneously transmit to Meta and other third parties that the visitor is inquiring about an ADHD diagnosis. ¶¶ 82-84. A visitor who participates in Done's online mental health assessment likewise has their information intercepted, revealing to the third-party tech companies that the visitor has taken the mental health assessment for possible treatment of ADHD. ¶ 88. The tracking tools also trigger the transmission of unique identifiers for the website visitor, which the tech companies can use to link the web communications with an identified individual who has an account with Facebook, TikTok, or one of the other tech companies. ¶¶ 55-57, 71-72. This enables the tech companies to sell advertising to entities like Done that want to target individuals with ads for products or services based on certain health conditions or similar characteristics. *See e.g.,* ¶¶ 67, 89-91.

Like other Done users, Plaintiff M.H. visited the Done website to research treatments, medications, and physicians related to his ADHD symptoms. ¶ 15. M.H. also used the Done website to take Done's intake mental health assessment. *Id.* M.H. maintained accounts with Facebook, Instagram, and Snapchat, and after visiting the Done website, M.H. recalls receiving ads from Done on Facebook. *Id.*

Done never disclosed its widespread deployment of the tracking tools, nor the fact that Plaintiff's personal health information was being transmitted to the third-party tech companies to facilitate targeted advertising. ¶¶ 30, 32. Instead, Done represented to users that, "Without [their] authorization, [Done is] expressly prohibiting from using or disclosing [a user's private health information] for marketing purpose." ¶ 32. But Done never obtained that authorization from Plaintiff or other class members. ¶¶ 8, 16.

## IV. ARGUMENT

### A. Plaintiff Adequately States a Claim under the California Invasion of Privacy Act.

The California legislature enacted the California Invasion of Privacy Act ("CIPA") "'to protect the right of privacy of the people of [California]' from what it perceived as 'a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society.'" *Ribas v. Clark*, 38 Cal. 3d 355, 359, 696 P.2d 637, 639–40 (1985) (quoting Cal. Penal Code. § 630). In particular, the stated

purpose of CIPA is to protect privacy rights in the face of "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications." Cal. Penal Code § 630. "A right to privacy 'encompass[es] the individual's control of information concerning his or her person.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983(9th Cir. 2017)).

"To plead a violation of § 631(a) [of CIPA], Plaintiff must allege sufficient facts to show that Defendant either (1) engaged in intentional wiretapping; (2) willfully read "the contents or meaning" of a communication without consent; (3) attempted to use or communicate information obtained as a result of engaging in the previous two activities; or (4) aided another in any of the previous three activities." *Smith v. YETI Coolers, LLC*, No. 24-CV-01703-RFL, 2024 WL 4539578, at *2 (N.D. Cal. Oct. 21, 2024). Here, Plaintiff alleges a violation of CIPA under prongs two and four—namely, that the third-party tech companies willfully read the contents or meaning of his communications without consent, and that Done "aided" the tech companies to commit that violation.

1. <u>Done Aided the Tech Companies to Intercept the Communications of Plaintiff and Class Members.</u>

To state a claim under prong two of CIPA, a Plaintiff must show "(1) the 'absence of consent' of all parties to the communication; (2) eavesdropping by a third-party nonparticipant to the communication; and (3) an interception of the communication 'while in transit.'" *Id.* (quoting *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756 (N.D. Cal. 2023)). Done does not appear to challenge the CIPA claim on this basis, but, in any event, the Complaint makes clear these elements are met.

First, Plaintiff sufficiently alleges that the third-party tech companies intercepted his communications without consent. As the Ninth Circuit recently explained, "consent can be express or implied, but any consent must be actual." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (cleaned up). And "[f]or consent to be actual, the disclosures must 'explicitly notify' users of the conduct at issue." *Id.* (quoting *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *13 (N.D. Cal.

Sept. 26, 2013)). Plaintiff alleges he never consented to Done disclosing his inquiries about ADHD treatment to the third-party tech companies. ¶ 16. Nor did Done's privacy policy explicitly notify Plaintiff and other Class Members it was sharing their personal health information with the tech companies. ¶ 32. These allegations sufficiently allege a lack of consent. *Cf. Valenzuela*, 674 F. Supp. 3d at 756–57 (finding lack of consent where "Plaintiff allege[d] she 'was not informed' her conversations were being 'recorded, intercepted, or eavesdropped upon,' and did not consent to monitoring by the third-party when she communicated with Defendant").

Second, Plaintiff adequately alleges the tech companies were third-party nonparticipants to the communications between Plaintiff and Done. The tech companies' status as nonparties to the communications "turns on whether [their] conduct was 'sufficiently independent' from [Done] to be considered a distinct party." *Smith*, 2024 WL 4539578, at *3 (quoting *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109 (C.D. Cal. 2023)). "To make this determination, courts have been instructed to analyze whether the technology (or actor) behaves more akin to a tape recorder utilized by the party to the conversation or as an eavesdropper pressing up against the door to listen to a conversation." *Id.* (cleaned up). For example, where the third party is capable of independently using the intercepted data for its own commercial purposes, courts have concluded the third party is more like an "eavesdropper." *Id.* (finding allegations sufficient where plaintiff alleged that third party monetized the intercepted data for "a distinct commercial purpose"); *see also Garcia v. Build.com, Inc.*, No. 22-CV-1985-DMS-KSC, 2024 WL 1349035, at *6 (S.D. Cal. Mar. 29, 2024) (observing that the relevant question is "whether Plaintiff has adequately alleged that [the third party] has the capability to use the [intercepted] data for its own purposes or benefit") (cleaned up). Plaintiff alleges that the tech companies independently monetize the intercepted data by selling targeted advertising to Done and other entities. ¶¶ 54, 74, 76-77, 81. Given their independent operations and commercial objectives, the tech companies are third-party eavesdroppers under CIPA.

Third, the Complaint sufficiently alleges that Plaintiff's communications were intercepted while "in transit." The Complaint describes in detail how the tracking tools operate to simultaneously duplicate and transmit to the third-party tech companies the same communications intended for and directed to

Done. *See, e.g,* ¶¶ 52, 62. Multiple courts have found that the Meta Pixel and similar tracking tools intercept online communications "in transit" under CIPA. *See Toy v. Life Line Screening of Am. Ltd.*, No. 23-CV-04651-RFL, 2024 WL 1701263, at *1 (N.D. Cal. Mar. 19, 2024) ("Regarding the ['in transit' element], the complaint offers highly detailed allegations about how Pixel works and how the alleged interception occurs."); *A.J. v. LMND Med. Grp., Inc.*, No. 23-CV-03288-RFL, 2024 WL 4579143, at *2 (N.D. Cal. Oct. 25, 2024) ("Contrary to Lemonaid's argument, the allegations that Lemonaid instantaneously intercepted users' interactions with its website, including their private medical information, and shared that data with third parties in real time . . . plausibly support that communications were intercepted in transit under Cal. Penal Code § 631(a)."); *Doe v. Eating Recovery Ctr. LLC*, No. 23-CV-05561-VC, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024) ([T]he complaint contains multiple allegations that Meta's 'transmission of information through the Pixel is instantaneous' and that Meta's code redirects users' communications 'simultaneously as the actions and communications on the website take place.' Based on these allegations, Doe has sufficiently pled that Meta intercepted her communications 'in transit' as required under § 631(a)."). Taken together, these facts sufficiently allege that the tech companies violated prong two of CIPA.

The Complaint likewise alleges with sufficient facts that Done knowingly "aided" the tech companies to violate CIPA, giving rise to Done's own liability under prong four of the statute. As this Court recently observed, the language of prong four "indicates that the defendant must be acting with the third party in order to have the third party perform acts that violate the statute. At the very least, that requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith*, 2024 WL 4539578, at *4; *see also M.G. v. Therapymatch, Inc.*, No. 23-CV-04422-AMO, 2024 WL 4219992, at *5 (N.D. Cal. Sept. 16, 2024) (finding CIPA claim viable under clause four where plaintiff alleged that defendant "knowingly agreed to use Google Analytics, embedded tracking technology code on its website, and allowed Google to have direct access to Headway users' private medical information"). Here, Plaintiff alleges that the express purpose of the tracking tools is to transmit a user's website communications to the tech companies to facilitate ad retargeting. *See* ¶¶ 40-42, 67, 72-74, 76-77, 81, 90. Given this stated

purpose—as articulated by the tech companies themselves in describing the tracking tools—the Court can infer that Done not only knew that the tech companies would intercept the communications of Done's website visitors, but that Done deployed the tracking tools to accomplish that very purpose. As summarized in the Complaint, by virtue of Done embedding the tracking tools on its website, "Done, Meta, TikTok, Snapchat, Google, and other third parties profit off Plaintiff's and Class Members' Personal Information without their knowledge, consent, or authorization." ¶ 91. This is sufficient to allege that Done "aid[ed], agree[d] with, . . . or conspire[d] with," Cal. Penal Code § 631(a), the tech companies to intercept the health-related communications of Plaintiff and Class Members.

Given this straightforward application of the statute, this Court and multiple other federal courts around the country have found CIPA claims viable based on substantially similar allegations. *See Toy*, 2024 WL 1701263, at *1 ("These allegations plausibly plead that Life Line 'aid[ed], agree[d] with, employ[ed], or conspire[d] with' Facebook and/or Google to intercept Toy's information. Cal. Pen. Code § 631(a). The motion to dismiss the CIPA claim is therefore denied."); *LMND Med. Grp., Inc.*, 2024 WL 4579143, at *2 (same); *Eating Recovery Ctr. LLC*, 2024 WL 2852210, at *1 (same); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) (same); *Therapymatch, Inc.*, 2024 WL 4219992, at *5 (same); *see also St. Aubin v. Carbon Health Techs., Inc.*, No. 24-CV-00667-JST, 2024 WL 4369675, at *9 (N.D. Cal. Oct. 1, 2024) ("Carbon Health's motion to dismiss Plaintiff's Section 631(a) claim is denied with respect to Plaintiff's Facebook Pixel claims but granted with respect to Plaintiff's Google Pixel claims."); *Castillo v. Costco Wholesale Corp.*, No. 2:23-CV-01548-JHC, 2024 WL 4785136, at *10 (W.D. Wash. Nov. 14, 2024) (denying Costco's motion to dismiss CIPA claim based on use of Meta Pixel on pharmacy website).

2. <u>Done's Challenges to the CIPA Claim are Unpersuasive.</u>

Done raises two challenges to the CIPA claim. First, Done contends that because "Plaintiff voluntarily accessed Done's webpage and voluntarily shared his information," the CIPA claim fails because "CIPA only applies to third party interception of communications." Def. Mot. to Dismiss ("MTD") at 3. This argument misses the mark. As addressed above, Plaintiff does not allege direct liability for Done under the first three prongs of CIPA. Rather, Done's liability arises under prong four

based on Done *aiding* the tech companies—which are independent third parties—to unlawfully intercept Plaintiff's health-related communications. ¶¶ 144-146. When Plaintiff accessed the Done website to communicate about ADHD symptoms, he intended to communicate only with Done. ¶ 17. Yet by deploying the tracking tools on its website, Done aided, agreed with, and conspired with the third-party tech companies to intercept Plaintiff's communications without consent. CIPA prohibits that exact conduct. *See, e.g., Toy*, 2024 WL 1701263, at *1 (N.D. Cal. Mar. 19, 2024) ("These allegations plausibly plead that Life Line 'aid[ed], agree[d] with, employ[ed], or conspire[d] with' Facebook and/or Google to intercept Toy's information. Cal. Pen. Code § 631(a).").

Second, Done argues that CIPA does not apply to internet communications, and because Plaintiff "accessed Done's website wirelessly," the CIPA claim fails. MTD at 3. This argument is similarly misplaced. While prong one of CIPA may not apply to internet communications, Plaintiff does not bring a claim under prong one. Instead, Plaintiff's claim arises under prongs two (as to the tech companies) and four (as to Done), both of which apply to internet communications. *Jones v. Tonal Sys., Inc.*, No. 3:23-CV-1267-JES-BGS, 2024 WL 4357558, at *3 (S.D. Cal. Sept. 30, 2024) ("Plaintiff's first CIPA claim falls under the second, third, and fourth prongs of section 631(a). These prongs respectively prohibit interception. These prongs have also regularly been interpreted to cover internet communications."); *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *20 (N.D. Cal. Sept. 26, 2013) ("[T]he Court finds no reason to conclude that the limitation of 'telegraphic or telephone' on 'wire, line, cable, or instrument' in the first clause of the statute should be imported to the second clause of the statute."). The "host of cases" Done points to alleging claims under the first prong of CIPA are therefore irrelevant.[2]

One case cited by Done, *James v. Allstate Ins. Co.*, No. 3:23-CV-01931-JSC, 2023 WL 8879246, at *2 (N.D. Cal. Dec. 22, 2023), did raise claims under prongs two and four, but the court in that case

---

[2] Done's reliance on *A.S. v. SelectQuote Ins. Servs.*, No. 3:23-CV-02258-RBM-MSB, 2024 WL 3881850, at *10 (S.D. Cal. Aug. 19, 2024), is likewise irrelevant because plaintiffs in that case, unlike here, did not clearly plead a violation of prongs two and four of CIPA. *Id.* ("[I]t is not apparent to the Court whether the interceptor—whether it be Facebook, LeadID, or some other third party—is alleged to have violated clauses one, two, three, or some combination thereof."). *See also* ¶¶ 144-146.

dismissed the CIPA claim for pleading deficiencies, not because the court found CIPA generally inapplicable to internet communications. *Id.* (observing that "Plaintiff has similarly not alleged Heap read, attempted to read, or to learn the meaning of his communications with Allstate; rather, he merely alleges Heap recorded the data and stores it on its servers."). Done's sweeping proposition that "CIPA does not apply to information communicated over the internet," MTD at 5, has no bearing on Plaintiff's well-pleaded claim under prongs two and four of CIPA. Accordingly, Done's motion to dismiss the CIPA claim should be denied.

**B. Plaintiff Adequately States Claims for Invasion of Privacy.**

Claims for invasion of privacy under the California Constitution and common law have similar elements, and when considering them together, courts assess whether the plaintiff has pleaded (1) a reasonable expectation of privacy and (2) whether the intrusion was highly offensive. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601. The Complaint satisfies these elements.

First, Plaintiff sufficiently alleges he had a reasonable expectation of privacy in his health-related communications with Done. *See, e.g.*, ¶¶ 114-17, 157-59. Courts recognize a reasonable expectation privacy in the context of health-related communications transmitted via a healthcare provider's website. *St. Aubin*, 2024 WL 4369675, at *12 (N.D. Cal. Oct. 1, 2024) ("As Plaintiff has alleged, the URLs pertain to appointments the Plaintiff made, and the transmitted URLs contain information regarding the specific symptoms, physical condition, or course of treatment of an individual. The pleadings here are sufficient to support a reasonable expectation of privacy."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 800 (N.D. Cal. 2022) (noting that "plaintiffs [would] likely be able to show that they had an objectively reasonable expectation that their communications with their medical providers were confidential based on the laws and regulations protecting the confidentiality of medical information," and that "[c]ase law also supports plaintiffs' position that individuals maintain a reasonable expectation of privacy in detailed URLs").

Second, Plaintiff alleges that aiding the third-party tech companies to intercept his communications constituted an intrusion that was highly offensive. *See, e.g.*, ¶ 177. "Given the factually intensive nature of the inquiry, courts are generally hesitant to decide claims of this nature at the pleading

stage," and "only if the allegations show no reasonable expectation of privacy or an insubstantial impact on privacy interests can the question of a serious or highly offensive invasion be adjudicated as a matter of law." *St. Aubin*, 2024 WL 4369675, at *12 (cleaned up). For that reason, multiple courts have allowed claims based on substantially similar allegations to move forward. *Id.* at *13 ("[P]laintiff alleges that Defendant implemented a system that surreptitiously allowed third parties, including Facebook and Google, to track, record, and intercept Plaintiff's and other online patients' confidential communications, personally identifiable information, and PHI, and use that information for marketing and other purposes. At this stage of the litigation, that is sufficient to allege that Defendant's conduct was highly offensive."); *In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 655 (N.D. Cal. 2024) ("[G]iven that plaintiffs were communicating with their healthcare providers about their healthcare needs, plaintiffs have alleged enough for [the invasion of privacy] claim to proceed to discovery"); *Cousin*, 702 F. Supp. 3d at 974 (allowing invasion of privacy claim to proceed where "Plaintiffs allege[d] that their medical conditions and statuses as patients with certain doctors were tracked on Defendant's website and transmitted to Meta"); *see also Toy*, 2024 WL 1701263, at *3 ("The complaint plausibly alleges that Toy had a reasonable expectation of privacy in her use of at-home health tests provided by Life Line, and whether Life Line's alleged intrusion by disclosing that sensitive information to Facebook and/or Google was highly offensive is an issue not suitable for decision on the pleadings.").

Done cites to this Court's decision in *Marden v. LMND Med. Grp., Inc.*, No. 23-CV-03288-RFL, 2024 WL 4448684, at *5 (N.D. Cal. July 3, 2024), where the Court dismissed plaintiffs' claims for invasion of privacy based on pleading deficiencies. But the Court also granted leave to amend for certain plaintiffs, *id.* at 5-6, and has elsewhere allowed similar claims of invasion of privacy to move forward based on a website's disclosure of health information to Meta and Google. *Toy*, 2024 WL 1701263, at *1, *3 (denying motion to dismiss invasion of privacy and intrusion upon seclusion claims based "Life Line's alleged intrusion by disclosing . . . sensitive information to Facebook and/or Google" via "trackers embedded in its website"). Given Plaintiff's allegations that Done invaded his privacy and intruded into his private affairs by secretly deploying tracking tools on its website and allowing third-

party tech companies to intercept his health-related communications, the Court should likewise allow Plaintiff's claims to move forward.

**C. Plaintiff States a Claim for Brach of Confidence.**

Done moves to dismiss Plaintiff's claim for breach of confidence on the basis that Plaintiff alleged an express contract and failed to sufficiently allege a specific breach of confidence. Done's motion fails again here. "To prevail on a claim for breach of confidence under California law, a plaintiff must demonstrate that: (1) the plaintiff conveyed confidential and novel information to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding." *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1227 (9th Cir. 1997) (cleaned up).

Done argues, and Plaintiff does not disagree, that a breach of confidence claim is based on an implied or quasi-contract and would be mutually exclusive with any claim for breach of an express contract. *See Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002); *Fink v. Goodson-Todman Enterprises, Ltd.*, 9 Cal. App. 3d 996, 1009 (Ct. App. 1970); *see also* MTD at 7-8. Done's argument is, however, misplaced here as Plaintiff made no allegation of an express contract nor breach of any express contract. Plaintiff acknowledged the existence of a (defective) pop-up banner on Done's website related to the use of cookies, and the existence of Done's "Notice of HIPAA Privacy Practices." ¶¶ 31-32, 185. But Plaintiff made no allegation that this "Notice" constitutes a contract between the parties.

Done attempts to construe Plaintiff's allegations of the existence of privacy policies as an admission that the parties were subject to an express contract. MTD at 7 (referring to ¶¶ 30-32). Not so. Nowhere in the Complaint does Plaintiff allege a valid express contract between the parties that was breached. Plaintiff makes no claim and alleges no cause of action for breach of contract, nor any cause of action under contract law at all. *Cf. In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 948 (N.D. Cal. 2022) (denying motion to dismiss breach of confidence claim and noting it may be pled in the alternative to breach of contract claim); *B.K. v. Desert Care Network*, No. 223CV05021SPGPDX,

2024 WL 1343305, at *5, 10 (C.D. Cal. Feb. 1, 2024) (denying motion to dismiss breach of confidence claim when medical information was disclosed and Plaintiff made no allegations of breach of contract).

Done further argues that Plaintiff failed to allege "a specific, particular breach of confidence." MTD at 8. Done cites no case law or support for its assertion that Plaintiff must make such an allegation in order to survive a motion to dismiss. Regardless, Plaintiff did make specific allegations of breach of confidence. Specifically, Plaintiff alleged that he conveyed confidential, novel, personal mental health information. ¶ 184. Even more specifically, Plaintiff alleged he conveyed information related to ADHD and completed Done's mental health assessment. ¶¶ 4, 15, 33, 184. Plaintiff alleged that Done knew this information was disclosed in confidence because Done itself acknowledges through its "Notice of HIPAA Privacy Practices" that it may not disclose private health information for marketing purposes without authorization. ¶¶ 32, 185. Plaintiff alleged in great detail how Done disclosed this confidential health information to third parties through the use of tracking tools. ¶¶ 33, 35, 65-66, 68, 82-92, 187. Plaintiff therefore sufficiently made specific allegations to support a claim for breach of confidence, and Done's motion to dismiss should be denied on that basis.[3]

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Done's motion to dismiss the Complaint. To the extent the Court finds any of Plaintiff's claims deficient, Plaintiff requests leave to amend.

Respectfully submitted,

**ZIMMERMAN REED LLP**

Dated: December 20, 2024 By: *s/Ryan Ellersick*

Ryan J. Ellersick (SBN 357560)
14648 North Scottsdale Road, Suite 130
Scottsdale, AZ 85254
Tel: (480) 348-6400
ryan.ellersick@zimmreed.com

Caleb Marker
Flinn T. Milligan
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
caleb.marker@zimmreed.com

[3] Plaintiff withdraws his claim in Count IV under California's Unfair Competition Law.

flinn.milligan@zimmreed.com

Hannah Brown
80 S 8th St., Ste 1100
Minneapolis, MN 55402
hannah.brown@zimmreed.com

*Attorneys for Plaintiff and the Putative Classes*