Jonathan Gross, State Bar No. 122010
jgross@moundcotton.com
Barry Temkin, Pro Hac Vice
btemkin@moundcotton.com
Lawrence Hecimovich, State Bar No. 129688
lhecimovich@moundcotton.com
MOUND COTTON WOLLAN & GREENGRASS LLP
2200 Powell Street, Suite 1050
Emeryville, California 94608
Telephone: (510) 900-9371

Attorneys for Defendant/ Third Party Plaintiff
DONE GLOBAL, INC.

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.H., individually, and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DONE GLOBAL, INC.,<br><br>Defendant.<br><br>DONE GLOBAL, INC.,<br><br>Third Party Plaintiff,<br><br>**v.**<br><br>META PLATFORMS INC.,<br>Third Party Defendant. | Case No.: 3:24-cv-03040-RFL<br><br>**DEFENDANT DONE GLOBAL, INC.'S THIRD PARTY COMPLAINT AGAINST META PLATFORMS, INC.** |

**<u>Introductory Statement</u>**

1. This third-party complaint against Meta Platforms Inc. ("Meta") is brought by Defendant/third party Plaintiff Done Global Inc. ("Done"). Done seeks equitable indemnity and contribution from Meta. Done also alleges, in the alternative, that if any party violated the California Invasion of Privacy Act (CIPA), it was Meta. Done further asserts a third party claim for Invasion of Privacy and Intrusion Upon Seclusion, and negligent misrepresentation. Done also seeks a declaratory judgment as to Meta's liability.

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

2. This third-party complaint is brought pursuant to F. R. Civ. P. 14. That rule provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."

3. Done alleges that Meta "is or may be liable to it for all or part of the claim against it" within the meaning of Rule 14.

4. Done denies the allegations of the Complaint to the extent set forth in its accompanying Answer and affirmative defenses. However, to the extent that the Plaintiff M.H. ("Plaintiff") claims liability against Done, its liability is secondary to and derivative of the primary liability of Meta. This is because the Plaintiff's Complaint (attached) explicitly alleges that Done "aided and abetted" a primary violation by Meta.[1]

5. Plaintiff's underlying Complaint alleges that "Done *Aids and Abets* the Third-Party Interception of Communications on its Website by Deploying the Tracking Tools."[2] The Complaint alleges that Meta Pixel causes private information ("PII") to be surreptitiously transmitted to Meta.[3]

6. Plaintiff claims that Done aided and abetted a primary violation by Meta.

According to the Plaintiff's filing with this Court:

> To plead a violation of § 631(a) [of the California Invasion of Privacy Act (CIPA), Plaintiff must allege sufficient facts to show that Defendant either (1) engaged in intentional wiretapping; (2) willfully read "the contents or meaning" of a communication without consent; (3) attempted to use or communicate information obtained as a result of engaging in the previous two activities; or (4) ***aided another in any of the previous three activities***." . . . Here, Plaintiff alleges a violation of CIPA under prongs two and four—namely, that the third-party tech companies willfully read the contents or meaning of his communications without consent, ***and that Done "aided" the tech companies to commit that violation.***[4]

7. Plaintiff's underlying complaint alleges a primary violation by Meta, which was allegedly aided and abetted by Done. Judge Lin found, in denying Done's motion to dismiss, that: "Plaintiff alleges a theory of derivative, not direct, liability for facilitating third parties' violation of

---

[1] Plaintiff's underlying prime complaint, 3:24-cv-03040, Dkt. [1] ¶ 145. (Copy Attached).

[2] Id. at 19.

[3] Id., ¶ 83.

4 Plaintiff's Opposition to Done's Motion to Dismiss, (Docket No. 35 at 4.)

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

CIPA's second clause"[5] Judge Lin wrote in her order that Plaintiff pleaded a claim for aiding and abetting Meta and other third parties. According to the Court:

> Plaintiff's theory is that Done is liable under the fourth clause of § 631(a) because Done "aid[ed], employ[ed], and agree[d] with, and conspire[ed] with Meta, TikTok, Snapchat, Google, and other third-party technology companies to track and intercept Plaintiff's and the Class Members' communications while using [Done's] Website. (Complaint ¶145)[6]

8. Plaintiff further alleges in his underlying Complaint that:

> Meta's core business function is to sell advertising, and it does so on several platforms, including Facebook and Instagram. The bulk of Meta's billions of dollars in annual revenue comes from advertising- a practice in which Meta actively participates by using algorithms that approve and deny ads based on the ads' content, human moderators that further review ads for both legality and aesthetics prior to and after the ads are published, and other algorithms that connect ads to specific users, *without the assistance or input of the advertiser*.[7]

9. Plaintiff attributes Meta's advertising success to its ability to collect information about users that is used to target users, leading "thousands of companies and individuals [to] utilize Facebook's advertising services."[8] Plaintiff alleges that by using Meta Pixel, Meta is able to intercept user visits to websites, sending information, including PII, *to itself*. Then "Meta stores this data on its own servers, in some instances for years on end, and *independently uses the data for its own financial gain*."[9]

10. Plaintiff further alleges that:

> Once Meta has that data, it can process it, analyze it, and assimilate it into databases like Core Audiences or Custom Audiences for advertising purposes. If the website visitor is also a Facebook user, Meta will associate the information that it collects from the visitor with a Facebook ID that identifies the user's name and Facebook profile. In sum, Pixel allows Meta to learn, manipulate, and use for financial gain, the medical and private content Defendant's Website visitors communicated, viewed,

---

[5] Plaintiff's underlying prime complaint, 3:24-cv-03040, Dkt. [1]. at 3.

[6] Judge Lin Decision and Order on Done's MTD, Dkt. # [42] at 2.

[7] Plaintiff's underlying prime complaint, 3:24-cv-03040, Dkt. [1], ¶ 36.

[8] Plaintiff's underlying prime complaint, 3:24-cv-03040, Dkt. [1], ¶ 38.

[9] Plaintiff's underlying prime complaint, 3:24-cv-03040, Dkt. [1], ¶ 54.

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

or otherwise interacted with on Defendant's Website.[10]

11. Plaintiff alleges that Done has merely aided and abetted a primary violation by Meta. It is unfair and inequitable for the aider and abettor to be entirely liable for a tort perpetrated by the primary actor. To the extent that Done is being charged with aiding and abetting Meta, then Meta should be in court to answer for and defend its primary wrongdoing.

12. Done accordingly brings this third-party Complaint under F. R. Civ. P. 14 for equitable indemnity and contribution against Meta on the grounds that its liability is derivative of and secondary to the primary tortious conduct of Meta. In the alternative, Done alleges a violation of CIPA and common law invasion of privacy, and seeks a declaratory judgment as to Meta's responsibility for its conduct.

**Jurisdiction and Venue**

13. As alleged in Plaintiff's underlying prime Complaint, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy allegedly exceeds the sum of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Done.[11]

14. Third-party Defendant Meta Platforms, Inc. is a corporation formed pursuant to the laws of the State of Delaware, with its headquarters located at 1 Meta Way, Menlo Park, CA.

15. This Court has venue over this third-party Complaint because a substantial portion of the events giving rise to this complaint occurred in this District. (Complaint, Par. 21.) Venue is further proper under 28 U.S.C. §§ 1391(b)(l)-(2) because Meta systematically and continuously conducts business in this District and because a substantial part of the events, omissions, and acts giving rise to Plaintiff's and Defendant's claims herein occurred in this District. In a similar case involving allegations that the Meta Pixel surreptitiously transmitted website user activity to Meta, Meta admitted that "California has an obvious substantial relationship" to the case.[12]

---

[10] Id., ¶ 67

[11] Plaintiff's Underlying Prime Complaint, Docket No. 1 at Par. 19.

[12] *In re Meta Tax Filing Litig.*, N.D. Cal. Case No. 22-cv-07557, ECF No. 107, at 7:4.

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

**<u>Done's Allegations Regarding Meta Pixel Arise From Plaintiff's Allegations And From Meta's Own Representations.</u>**

16. Meta owns and operates Facebook, the largest social networking platform in the world. According to Plaintiff's underlying Complaint, Meta intercepted the medical information of visitors to Done's website. Plaintiff does not allege that Meta had prior consent from Done to collect or make use of this medical information.

17. Meta offers a suite of business tools that help website owners and publishers, app developers and business partners, including advertisers and others, integrate with Facebook, understand and measure their products and services, and better reach and serve potential customers for their products and services.

18. One of Meta's tools is Meta Pixel, which is an invisible web element that website owners can install on their websites to measure actions taken by users. Meta describes Meta Pixel as: "a snippet of JavaScript code that allows you to track visitor activity on your website. It works by loading a small library of functions which you can use whenever a site visitor takes an action (called an event) that you want to track (called a conversion). Tracked conversions appear in the Ads Manager where they can be used to measure the effectiveness of your ads, to define custom audiences for ad targeting, for Advantage+ catalog ads campaigns, and to analyze that effectiveness of your website's conversion funnels."[13]

19. Meta Pixel has vast capabilities and can collect a large range of user data entirely separate and apart from medical information, including HTTP headers, the pixel ID, actions taken on a page, button click data (including the names of the buttons and pages visited as a result of button clicks), and form field information.

20. Upon information and belief, the website communications collected by Meta Pixel are transmitted in real time to Meta's servers in California, where the information is stored. Upon information and belief, Meta uses this information to provide its users with services and advertising information.

21. Upon information and belief, Meta has stated that, "When someone takes an action

[13] Meta Pixel, META, https://developers.facebook.com/docs/meta-pixel/ (last visited Jul 14, 2025).

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

that the [website] developer has chosen to measure on its website, the Meta Pixel is triggered and sends Meta certain data, called an 'Event.' Meta attempts to match the Events it receives to Meta users. The developer can then choose to show ads to users who have taken a certain action on their own website."

22. Upon information and belief, Meta receives the content of website communications in real time, as the website user enters the information, and *before* the website owner receives it.

23. Meta's exfiltration of customer or visitor data takes place before it reaches Done.

24. Upon information and belief, by design, Meta does not rely on the website owner's deliberate or intentional decision to share specific types of information such as protected medical information.

25. MetaPixel actively scrapes and tracks customer information without any input from or knowledge of Done.

26. Upon information and belief, Meta Pixel also may utilize "Automatic Advanced Matching." Automatic Advanced Matching enables Meta Pixel to look for recognizable form fields and other sources on websites that contain information such as first name, last name and email. Meta Pixel then intercepts and transmits that information, along with the event, or action to Done or other similarly situated service providers.

27. Upon information and belief, Meta intercepts and collects this information so it can better match visitors to their Facebook.com profiles, which in turn allows companies to better target their advertisements to enable prospective clients to access and make use of the companies' services.

28. Plaintiff's pleadings do not specifically allege that Meta "willfully read 'the contents or meaning' of a communication without consent," as required to establish Done's liability for aiding and abetting a violation of CIPA. Nor is there any allegation that Done knew that Meta "willfully read" Done users' PII. Instead, as acknowledged by both Plaintiffs and Meta, Meta represented to Done that Meta had no interest in and would not make use of users' private health information.

29. During the relevant class period, Done was not aware whether Meta "willfully read the contents or meaning of a communication without consent." Plaintiff alleges that Meta did in fact willfully read such PII without the customers' consent.

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

30. Upon information and belief, Meta made representations and warranties to user companies that it does not it does not collect, review or access sensitive information like the medical information at issue here.

31. Done reasonably relied upon Meta's representations and warranties that it does not collect, review or access sensitive personally identifiable information ("PII").

32. Done did not knowingly consent to Meta's collection of medical information on Done's website.

33. Upon information and belief, Meta states in its Advertising Policy that "[w]e do not use sensitive personal data for ad targeting."

34. In an article titled, "How does Facebook receive information from other businesses and organizations," Meta reiterates its promise to "prohibit businesses or organizations from sharing sensitive information with us." If Meta determine[s] "that a business or an organi[z]ation is potentially violating our terms, we may take action against that business or organi[z]ation."

35. Plaintiff alleges in his Complaint that Done improperly shared his medical information with Meta. However, Done was not aware whether Meta reviewed and made use of Plaintiff's medical information for its own unauthorized purposes. Meta did not inform Done that it planned to use its visitors' PII for other purposes.

36. The details and code of Meta Pixel are not shared with users such as Done. Meta did not explain to Done how or to what use Meta would use data from Done visitors or browsers.

37. Done has no information as to how or whether Meta uses its visitor data. Done does not know whether human eyes at Meta ever view its visitors' data.

38. Upon information and belief, Meta sold or conveyed the Plaintiff's PII to other users.

39. On April 24, 2025, Done sent Meta's Chief Legal Officer a demand letter tendering Done's defense to Meta. Meta has not responded to Done's demand letter.

**FIRST CAUSE OF ACTION**
**(EQUITABLE INDEMNITY)**

40. Done incorporates each of the above paragraphs and allegations as though set forth fully herein.

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

41. Done is alleged to have aided and abetted the primary violation of CIPA by Meta and to have violated Plaintiff's other rights under California law through Meta's actions.

42. According to the plaintiff, Done *"aided the tech companies to commit that violation"* of CIPA.[14]

43. Plaintiff's underlying Complaint alleges that "Done *Aids and Abets* the Third-Party Interception of Communications on its Website by Deploying the Tracking Tools."[15]

44. Judge Lin has written in her order denying Done's motion to dismiss that "Plaintiff alleges a theory of derivative, not direct, liability for facilitating third parties' violation of CIPA's second clause."

45. Done is being derivatively sued for a primary violation perpetrated by Meta.

46. As the alleged aider and abettor, Done seeks indemnity from the primary violator, for whose misconduct Done is being held derivatively liable.

47. As set forth above, Done was not aware of Meta's alleged improper uses of its visitors' PII. Meta's improper use of customers' PII would be inconsistent with Meta's express representations and guarantees to Done. Done was not aware that Meta was allegedly reviewing its visitors' private medical information for its own purposes.

48. Done did not knowingly aid and abet Meta in allegedly reviewing its visitors' PII.

49. MetaPixel actively scraped and tracked customer or visitor information without any input from or knowledge of Done.

50. In the event that Done is liable to Plaintiff and the prospective class for allegedly aiding and abetting Meta's improper review and use of Done visitors' medical information, then Meta is liable to Done for the full or equitable amount of that liability.

51. Under California law, fairness dictates that the party with the primary liability should pay a judgment based thereon.

14 Plaintiff's Opposition to Done's Motion to Dismiss, (Docket No. 35 at 4.)

15 Plaintiff's underlying prime complaint, 3:24-cv-03040, Dkt. [1] at 19.

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

**SECOND CAUSE OF ACTION**
**(EQUITABLE CONTRIBUTION)**

52. Done incorporates each of the above paragraphs and allegations as though set forth fully herein.

53. Under the doctrine of equitable contribution, a defendant is entitled to seek apportionment of loss between two alleged wrongdoers in proportion to their relative culpability, so that there will be equitable sharing of loss between multiple tortfeasors.

54. Done's liability to Plaintiff and the prospective class is derivative of and secondary to Meta's conduct in improperly reviewing protected medical information from Done's website and using that medical information for its own purposes.

55. Upon information and belief, as alleged by Plaintiff, Meta sold or conveyed Plaintiff's PII to other users.

56. Done was not aware that Meta was reviewing Done's visitors' private medical information and using that medical information for its own purposes, as alleged by Plaintiff, and in no way aided and abetted Meta in doing so.

57. Plaintiff alleges that Done has aided and abetted a primary violation perpetrated by Meta.

58. If Done is liable to Plaintiff and the prospective class for allegedly aiding and abetting Meta's improper review of Done visitors' medical information, then Meta is liable to contribute to any liability adjudicated against Done.

**THIRD CAUSE OF ACTION**
**(CALIFORNIA INVASION OF PRIVACY ACT,**
**CAL. PENAL CODE SECTIONS 630 et seq)**

59. Done incorporates each of the above paragraphs and allegations as though set forth fully herein.

60. As alleged in Plaintiff's Complaint and as found by the Court in its Order denying Defendant Done's Motion to Dismiss, Done's liability as an aider and abettor is derivative of Meta's violation of CIPA.

61. The Plaintiff has represented to the Court that Done's liability is derivative of and

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

secondary to the primary unlawful conduct of Meta and other non-parties that the plaintiff did not sue:

> To plead a violation of § 631(a) [of the California Invasion of Privacy Act (CIPA)], Plaintiff must allege sufficient facts to show that Defendant either (1) engaged in intentional wiretapping; (2) willfully read "the contents or meaning" of a communication without consent; (3) attempted to use or communicate information obtained as a result of engaging in the previous two activities; or (4) ***aided another in any of the previous three activities***." . . . Here, Plaintiff alleges a violation of CIPA under prongs two and four—namely, that the third-party tech companies willfully read the contents or meaning of his communications without consent, ***and that Done "aided" the tech companies to commit that violation.***[16]

62. CIPA imposes liability on any person who by means of any machine, instrument, contrivance, or in any other manner (1) intentionally taps or makes any unauthorized connection with any telegraph or telephone wire, line cable or instrument; (2) willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable. . . (3) uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or (4) aids, agrees with, employs or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

63. Done denies the allegations of Plaintiff's Complaint to the extent set forth in its Answer.

64. Meta is a person for purpose of CIPA.

65. Plaintiff alleges, without distinguishing between generic user information and users' PII, that Meta violated CIPA by willfully reading or attempting to read or learn the contents of any message, report or communication while the same was in transit or passing over any wire, line or cable, or was being sent from or received at any place within the State of California.

66. Plaintiff alleges that Meta's MetaPixel intercepted, tracked and read his communications.

67. Plaintiff alleges that he did not consent for Meta to intercept, read or use his data and

16 Plaintiff's Opposition to Done's Motion to Dismiss, (Docket No. 35 at 4.)

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

communications.

68. In the alternative, Meta utilized machines, instruments or contrivances to intercept Plaintiff's communications while they were in protected transit.

69. MetaPixel actively scraped and tracked customer information without any input from or knowledge of Done.

70. Done has an interest in the privacy of its customers' information.

71. The foregoing conduct, to the extent proven by Plaintiff, would constitute a violation of the CIPA by Meta.

72. Based on the foregoing, in the event that Plaintiff proves the allegations of its complaint, Meta would be the primary violator, and any liability of Done would be secondary and derivative.

**FOURTH CAUSE OF ACTION**
**(INVASION OF PRIVACY AND INTRUSION UPON SECLUSION)**

73. Done incorporates each of the above paragraphs and allegations as though set forth fully herein.

74. The elements of Invasion of Privacy and Intrusion Upon Seclusion Claims are (1) a reasonable expectation of privacy and (2) whether the intrusion was highly offensive.

75. Plaintiff alleges a reasonable expectation of privacy in his communications.

76. Plaintiff alleges that Meta's intrusion was highly offensive.

77. Done has an interest in the privacy of its customers' information.

78. In the alternative, upon information and belief, Done alleges that Plaintiff had a reasonable expectation of privacy in his medical information and that Meta's alleged intrusion was highly offensive.

79. In the event that Done is held liable for invasion of privacy and intrusion upon seclusion, its liability would be derivative of and secondary to the primary liability of Meta for its conduct.

**FIFTH CAUSE OF ACTION**
**(F.R. Civ. P. 14)**

80. Done reincorporates and realleges all preceding facts as if fully set forth herein.

81. Meta is liable to Done under F. R. Civ. P. 14. That rule provides that "[a] defending

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."

82. Done alleges that Meta "is or may be liable to it for all or part of the claim against it" within the meaning of Rule 14.

83. Accordingly, Meta is liable to Done under Rule 14.

**SIXTH CAUSE OF ACTION**
**(DECLARATORY RELIEF)**

84. Done reincorporates and realleges all preceding facts as if fully set forth herein.

85. A real and justiciable controversy has arisen between Done and Meta.

86. Done is entitled to a judicial resolution of the controversy and a declaratory judgment that Meta is responsible to indemnify it and contribute to resolution of this controversy.

**SEVENTH CAUSE OF ACTION**
**(NEGLIGENT MISREPRESENTATION)**

87. Done reincorporates and realleges all preceding facts as if fully set forth herein.

88. Meta made multiple representations to Done and other users with intent that they rely upon them.

89. As set forth above, Meta made numerous and repeated representations and warranties to Done and other user companies that it does not it does not collect, review or access sensitive information like the medical information at issue here.

90. Done reasonably relied upon Meta's representations and warranties that it does not collect, review or access site users' PII.

91. Done did not knowingly consent to Meta's collection of medical information on Done's website.

92. Upon information and belief, Meta states in its Advertising Policy that "[w]e do not use sensitive personal data for ad targeting."

93. In an article titled, "How does Facebook receive information from other businesses and organi[z]ations," Meta reiterates its promise to "prohibit businesses or organizations from sharing sensitive information with us," and if Meta determine[s] "that a business or an organi[z]ation is potentially violating our terms, we may take action against that business or organi[z]ation."

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

94. The foregoing representations by Meta were false or misleading.

95. Done reasonably relied upon those representations to its detriment.

96. As a result of the foregoing, Done has been damaged.

**PRAYER FOR RELIEF**

WHEREFORE, Done respectfully asks this Court to enter judgment against Meta and in favor of Done, and award the following relief:

1. Indemnification of Done for any liability Done is adjudicated to have toward Plaintiff and the prospective class.

2. Defense of Done against any and all claims filed by the plaintiff herein.

3. A determination and judgment under F. R. Civ. P. 14 that Meta is "liable to [Done] for all or part of the claim against" Done.

4. Equitable apportionment of any liability Done is adjudicated to have toward Plaintiff and the prospective class.

5. A declaratory judgment that Meta is responsible to indemnify it and contribute to resolution of this controversy.

6. Reasonable attorney's fees, costs and expenses; and

7 Such other relief as the Court deems just and proper.

Date: July 24, 2025

MOUND COTTON WOLLAN & GREENGRASS LLP

By: *Lawrence Hecimovich*
Jonathan Gross
Barry Temkin
Lawrence Hecimovich
Attorneys for Defendant/ Third Party Plaintiff
DONE GLOBAL, INC.