**LATHAM & WATKINS LLP**
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Francis J. Acott (Bar No. 331813)
*francis.acott@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Third-Party*
*Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

M.H., individually, and on behalf of those similarly situated,

Plaintiff,

v.

DONE GLOBAL, INC.,

Defendant.

---

DONE GLOBAL, INC.,

Third-Party Plaintiff,

v.

META PLATFORMS, INC.,

Third-Party Defendant.

Case No. 3:24-cv-03040-RFL

**THIRD-PARTY DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Date: May 12, 2026
Time: 10:00 a.m.
Court: Courtroom 15, 18th Floor
Hon. Rita F. Lin

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on May 12, 2026, at 10:00 a.m. in Courtroom 15 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Third-Party Defendant Meta Platforms, Inc. ("Meta") will and hereby does move the Court pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to compel arbitration of the claims brought against it by Defendant and Third-Party Plaintiff Done Global, Inc. ("Done Global"), and to stay all proceedings as to Meta pending arbitration pursuant to 9 U.S.C. § 3.

This motion is based on Meta's Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the concurrently filed Declaration of Michael P. Duffey, the pleadings and papers on file in this action, the arguments of counsel, and any other matter that the Court may properly consider.

**STATEMENT OF RELIEF SOUGHT**

Meta respectfully requests that the Court enter an Order:

1. Compelling Done Global to arbitrate its claims against Meta in accordance with the parties' arbitration agreement and the FAA; and
2. Staying the proceedings against Meta pending the completion of arbitration.

Dated: December 23, 2025

LATHAM & WATKINS LLP

By: /s/ *Melanie M. Blunschi*

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Francis J. Acott (Bar No. 331813)
*francis.acott@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant*
*Meta Platforms, Inc.*

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. Done Global's Claims Arise Out Of Its Use Of The Meta Pixel For Commercial Purposes ..... 2

B. Meta's Commercial Terms Include An Arbitration Provision ..... 3

C. Done Global Agreed To Meta's Commercial Terms ..... 4

D. Notwithstanding The Arbitration Agreement, Done Global Sued Meta And Asserted Claims Related To Its Use Of The Meta Pixel ..... 6

1. Plaintiff Sues Done Global For Misuse Of Pixel Technology ..... 6

2. Done Global Files Its Third-Party Complaint Against Meta ..... 7

III. LEGAL STANDARD ..... 7

IV. DONE GLOBAL AGREED TO ARBITRATE THIS DISPUTE ..... 8

A. Done Global Agreed To The Arbitration Provision In The Commercial Terms ..... 8

B. The Arbitration Agreement Encompasses Done Global's Claims ..... 10

C. Done Global's Third-Party Action And Requests for Arbitration-Related Discovery Must Be Stayed Pending Arbitration ..... 12

V. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## CASES

*Berman v. Freedom Fin'l Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .... 12

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) .... 10

*Blair v. Rent-A-Ctr., Inc.*,
928 F.3d 819 (9th Cir. 2019) .... 15

*Britton v. Co-op Banking Grp.*,
4 F.3d 742 (9th Cir. 1993) .... 14

*Cape Flattery Ltd. v. Titan Mar., LLC*,
647 F.3d 914 (9th Cir. 2011) .... 14

*Doe I v. Google LLC*,
741 F. Supp. 3d 828(N.D. Cal. 2024) .... 2

*Driskill v. Experian Info. Sols., Inc.*,
753 F. Supp. 3d 839 (N.D. Cal. 2024) .... 15

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) .... 13, 15

*Green Tree Fin. Corp.-Ala v. Randolph*,
531 U.S. 79 (2000) .... 10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .... 10

*Herrera v. Cathay Pac. Airways Ltd.*,
104 F.4th 702 (9th Cir. 2024) .... 11

*In re Holl*,
925 F.3d 1076 (9th Cir. 2019) .... 11, 13

*Ireland-Gordy v. Tile, Inc.*,
760 F. Supp. 3d 946 (N.D. Cal. 2024) .... 12

*Kangapoda Corp. v. Facebook, Inc.*,
2021 WL 11721658 (D.N.J. Dec. 13, 2021) .... 13

*Lag Shot LLC v. Facebook, Inc.*,
545 F. Supp. 3d 770 (N.D. Cal. 2021) .... 13

*Loewen v. Lyft, Inc.*,
2015 WL 12780465 (N.D. Cal. June 12, 2015) ..... 15

*McMahon v. Meta Platforms, Inc.*,
2023 WL 4546377 (W.D. Wash. July 14, 2023) ..... 13

*Morrison v. Yippee Ent., Inc.*,
2025 WL 2389424 (9th Cir. Aug. 18, 2025) ..... 13

*Norcia v. Samsung Tele Commc'ns. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017) ..... 10

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir 2023) ..... 11, 12, 13

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ..... 11, 12, 13

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) ..... 13

*Ugalde v. Syngenta Flowers, LLC*,
2025 WL 1828513 (N.D. Cal. July 1, 2025) ..... 15

**STATUTES**

9 U.S.C. § 1 *et seq.* ..... 7

9 U.S.C. § 3 ..... 8, 12

**RULES**

Fed. R. Civ. P. 14 ..... 9, 10

## I. INTRODUCTION

Third-Party Defendant Meta Platforms ("Meta") respectfully asks this Court to compel arbitration of the claims that Defendant and Third-Party Plaintiff Done Global has brought against it, and to stay all proceedings against Meta pending the resolution of arbitration.

Done Global is an online telehealth provider that is alleged to have improperly used web analytics tools made available by Meta, TikTok, Snapchat, and Google to "intercept" and disclose health data on its website. Relevant here, Plaintiff alleges that Done Global incorporated code from the Meta Pixel—Meta's version of ubiquitous online analytics technology that it makes publicly available to website developers—into Done Global's website and improperly sent health data to Meta, in violation of Meta's terms expressly *prohibiting* it from doing so. Done Global now claims that its alleged sharing of improper data through the Meta Pixel is *Meta*'s fault. That is meritless: Meta's Business Tools Terms require developers like Done Global to agree that they "will not share Business Tool Data with [Meta] that [they] know or reasonably should know" includes "sensitive information," Dkt. 1 ¶ 44, and website developers control the incorporation of the Pixel code into their websites. But that is a question for another day, and another forum, because Done Global agreed to arbitrate this dispute with Meta.

*First*, Done Global entered into a valid and binding arbitration agreement with Meta. As detailed in the accompanying Declaration of Michael P. Duffey, Meta's records show that Done Global repeatedly agreed to Meta's Commercial Terms, which require arbitration of any claims "aris[ing] out of or relat[ing] to any access or use of the Facebook Products" (which includes the Meta Pixel) "for business or commercial purposes." Ex. 6 § 5.[1] Done Global specifically assented to be bound by the Commercial Terms every time it purchased ads from Meta. *See* Duffey Decl. ¶¶ 18-22.

*Second*, Done Global's third-party claims against Meta are indisputably related to Done Global's use of the Meta Pixel for business or commercial purposes and thus fall squarely within the scope of the arbitration agreement. Like Plaintiff's underlying claims against Done Global,

[1] Unless specified, all references to Exhibits herein refer to those attached to the concurrently filed Declaration of Michael P. Duffey in Support of Meta's Motion to Compel Arbitration and Stay Proceedings ("Duffey Decl.").

the Third-Party Complaint against Meta is predicated on Done Global's use of the Meta Pixel: Done Global asserts that Meta is responsible for its disclosure of Done Global users' alleged personal information through the Meta Pixel, and that Meta supposedly collected customer information through the Pixel without Done Global's knowledge or consent. Dkt. 65 (Am. Third-Party Complaint ("TPC")) ¶¶ 4, 16-32, 40. Because Done Global's claims arise out of and relate to its use of the Pixel, they fall squarely within the Commercial Terms' arbitration agreement.

The assertion that Meta should be liable to Done Global for Done Global's own alleged misuse of the Pixel is meritless. As Judge Chhabria recognized in considering Google's similar technology, there is nothing "inherently unlawful" about Meta offering its Pixel code to website developers, including those in the health field. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 841 (N.D. Cal. 2024). The Business Tools Terms foreclose Done Global's claims—but those claims must be resolved in arbitration consistent with the Commercial Terms. Accordingly, Meta requests that the Court enforce the parties' arbitration agreement, compel Done Global to arbitrate its claims against Meta, and stay the proceedings against Meta in accordance with the Federal Arbitration Act ("FAA").

## II. BACKGROUND

### A. Done Global's Claims Arise Out Of Its Use Of The Meta Pixel For Commercial Purposes

The Meta Pixel is a publicly available piece of code that Meta makes available to website developers (like Done Global) to help them understand how visitors engage with their websites and to improve their advertising, subject to limitations and requirements set out in Meta's Business Tools Terms.[2] Dkt. 1 ¶ 41; *see also* Duffey Decl. ¶ 5. Developers choose whether to use the Meta Pixel and how to configure it, including what data is shared through the Pixel. *See* Dkt. 1 ¶ 45.

Plaintiff in the underlying lawsuit has alleged that Done Global transmitted user data to Meta through the Pixel "for purposes of future ad targeting and marketing." Dkt. 1 ¶ 5; *see also id.* at ¶ 8 (alleging Done Global disclosed Plaintiff's data to Meta "for ad retargeting and otherwise

[2] *See* Meta Pixel, https://www.facebook.com/business/tools/meta-pixel/.

monetizing Plaintiff's data").[3] Done Global, in turn, has sued Meta for "equitable indemnity and contribution" with respect to Plaintiff's claims. Dkt 65 at ¶ 1.

### B. Meta's Commercial Terms Include An Arbitration Provision

Since May 2018 (even before Done Global started using the Pixel), Meta's Commercial Terms have required commercial users (*i.e.*, those that use Meta's products for a "business or commercial purpose," like Done Global) to arbitrate any commercial dispute with Meta. The Commercial Terms state: "You agree to arbitrate Commercial Claims between you and Meta Platforms, Inc.," defined as "any claim, cause of action, or dispute that arises out of or relates to any access or use of the Meta Products for business or commercial purposes." Ex. 6 § 5(b-c) (Mar. 6, 2024); *see also* Ex. 7 § 5(b-c) (Jan. 4, 2022); Ex. 8 § 5(b-c) (Sept. 27, 2021); Ex. 9 § 5(b-c) (Aug. 31, 2020); Ex. 10 § 4(a-b) (May 25, 2018). The Commercial Terms further provide that "[b]usiness or commercial purposes include using ads, selling products, developing apps, … or using our measurement services regardless of the entity type." Ex. 6 at 1 (Mar. 6, 2024); *see also* Ex. 7 at 1 (Jan. 4, 2022); Ex. 8 at 1 (Sept. 27, 2021); Ex. 9 at 1 (Aug. 31, 2020); Ex. 10 at 1 (May 25, 2018). And the Commercial Terms define "Meta Products" by hyperlinking to webpages that expressly identify the Meta Pixel as one such Meta Product. Duffey Decl. ¶¶ 9-11.

The arbitration clause is flagged at the very outset of the Commercial Terms, in the introductory paragraphs, which state:

> As more fully described below, if you reside in the United States or your business is located in the United States, ***these Commercial Terms require the resolution of most disputes between you and us by binding arbitration on an individual basis***; class actions and jury trials are not permitted.

[3] If Done Global transmitted health information (or any information that it did not have Plaintiff's consent to share) to Meta, it did so in violation of Meta's Business Tools Terms, which require developers to provide "'robust and sufficiently prominent notice to users . . . on each web page where [Meta] pixels are used that links to a clear explanation (a) that third parties, including Meta, may . . . collect or receive information from your websites and elsewhere on the Internet and use that information to . . . deliver ads'" and which expressly prohibit developers from sending Meta data "'that you know or reasonably should know . . . includes health, financial information or other categories of sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines).'" Dkt. 1 ¶ 43 & 44. But this is a merits issue that the Court need not reach to compel Done Global's claims to arbitration.

Ex. 6 at 1 (emphasis added) (Mar. 6, 2024); *see also* Ex. 7 at 1 (Jan. 4, 2022); Ex. 8 at 1 (Sept. 27, 2021); Ex. 9 at 1 (Aug. 31, 2020); Ex. 10 at 1 (May 25, 2018). The full arbitration clause is conspicuously located in a section of the Commercial Terms titled "Disputes." Ex. 6 § 5 (Mar. 6, 2024); *see also* Ex. 7 § 5 (Jan. 4, 2022); Ex. 8 § 5 (Sept. 27, 2021); Ex. 9 § 5 (Aug. 31, 2020); Ex. 10 § 4 (May 25, 2018).

### C. Done Global Agreed To Meta's Commercial Terms

Done Global agreed to the Commercial Terms, including its arbitration agreement, on multiple occasions. Meta has located records indicating that Done Global placed ads on Meta between November 19, 2019 and March 25, 2024. *See* Duffey Decl. ¶ 18. In order to purchase each of those ads, Done Global was required to confirm at the time it placed each ad campaign that it agreed to Meta's Terms of Service, including the Commercial Terms containing the arbitration provision. *Id.* ¶¶ 19-22.

Since at least July 25, 2019 (*i.e.*, before Done Global started placing ads), and until March 2021, each time an advertiser purchased an ad, the advertiser encountered a screen with a button labeled "Confirm." *Id.* ¶ 20. Immediately underneath this button was the following language: "By clicking 'Confirm,' you agree to Facebook's Terms of Service including your obligations to comply with the Self-Serve Ad Terms, the Commercial Terms, and the Facebook Advertising Policies." *Id.* ¶ 20. The screen highlighted the arbitration clause: "[I]f you reside in the US or your business is located in the US, [this] requires the resolution of most disputes by binding arbitration on an individual basis." *Id.* ¶ 21 & Ex. 6. A screenshot of the advertiser's view is below:




Each policy mentioned on this screen, including the Commercial Terms, was hyperlinked and in blue font. *Id.* ¶ 20. An advertiser purchasing an ad during this time could not do so without

clicking the "Confirm" button (*id.*), thus manifesting agreement to these policies, including the Commercial Terms. *See* Exs. 6-10.

In March 2021, the webpage changed slightly so that a user purchasing an ad encountered a button labeled "Publish." *Id.* ¶ 22. Immediately above and to the left of this button was the statement: "By clicking 'Publish,' you agree to Facebook's Terms and Advertising Guidelines." *Id.* The following screenshot illustrates the change:




The phrase "Terms and Advertising Guidelines" is a blue hyperlink that, when pressed, drops down a disclosure substantively identical to the prior one. The disclosure stated: "By clicking '**Publish**,' you agree to the Facebook Terms of Service including your obligation to comply with the Self-Serve Ad Terms, the ***Commercial Terms***, and the Facebook Advertising Policies." *Id.* ¶ 22 (emphasis added). Like the prior disclosure, this one included hyperlinks in blue font and noted that agreeing to the Commercial Terms "requires the resolution of most disputes by binding arbitration on an individual basis" "if you reside in the US or your business is located in the US." *Id.* A screenshot of this disclosure is below.



### D. Notwithstanding The Arbitration Agreement, Done Global Sued Meta And Asserted Claims Related To Its Use Of The Meta Pixel

1. <u>Plaintiff Sues Done Global For Misuse Of Pixel Technology</u>

In May 2024, Plaintiff filed a putative class action complaint against Done Global alleging that Done Global unlawfully used the Meta Pixel and other similar technologies offered by TikTok, Snapchat, and Google on Done Global's website. Dkt. ¶ 1. Specifically, Plaintiff alleges that Done Global purposely used the Meta Pixel and other similar third-party technologies (the TikTok Pixel, the Snap Pixel, Google Analytics, and Google DoubleClick) on its website to collect patients' personally identifiable information and personal health information and sent that data to Meta and others for advertising purposes "without patients' knowledge or consent." *Id.* ¶¶ 1, 8. Plaintiff alleges that Done Global transmitted user data to Meta through the Pixel "for purposes of future ad targeting and marketing." *Id.* ¶ 5; *see also id.* at ¶ 8 (alleging Done Global disclosed Plaintiff's data to Meta "for ad retargeting and otherwise monetizing Plaintiff's data"). Plaintiff further alleges that Done Global sent this data despite agreeing to Meta's Business Tools Terms, through which Done Global promised Meta that it would not send "health information" or "other categories of sensitive information" and that it would inform Plaintiff and others who visit Done Global's website about its use of the Pixel. *Id.* ¶¶ 41-44.

Plaintiff asserted five claims against Done Global: (1) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630 *et seq*.; (2) invasion of privacy under the California Constitution; (3) common law invasion of privacy; (4) breach of confidence; and (5) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. *Id.* ¶¶ 139-203. Though Meta, TikTok, Snapchat, or Google are not Defendants in the Complaint, Plaintiff alleges that Done Global violated CIPA by "aiding, employing, agreeing with, and conspiring with Meta, Tiktok, Snapchat, [and] Google" to intercept Plaintiff's communications. *Id.* ¶ 145. Done Global moved to dismiss the complaint (Dkt. 28), but the Court largely denied that motion in February 2025, dismissing only the UCL claim. Dkt. 42.

2. Done Global Files Its Third-Party Complaint Against Meta

After the Court denied the bulk of its motion to dismiss, Done Global filed a Third-Party Complaint against Meta under Federal Rule of Civil Procedure 14, Dkt. 58, which it later amended, Dkt. 65 ("TPC"). Done Global alleges that Meta "is or may be liable to it for all or part of the claim against it within the meaning of Rule 14." TPC ¶ 3 (citing Fed. R. Civ. P. 14).

Done Global's claims arise from and relate to its use of the Meta Pixel for commercial purposes. Done Global alleges that *Meta* is responsible for Done Global collecting allegedly personally identifiable information and health information from its users through Done Global's incorporation of the Meta Pixel, allegedly without Done Global's knowledge or consent. *Id.* ¶¶ 31-32, 40. That claim is implausible and the TPC is rife with mischaracterizations.[4] Even Plaintiff alleges that *Done Global* "embedded and deployed" the Meta Pixel, configured and used it to "surreptitiously intercept" and transmit users' data to "increase the success of its advertising," and violated Meta's Business Tools Terms by sending prohibited "health information" to Meta. *See, e.g.*, Dkt 1. ¶¶ 1-5, 35, 41-44. The TPC purports to assert seven causes of action against Meta for (1) equitable indemnity; (2) equitable contribution; (3) violation of CIPA § 631; (4) common law invasion of privacy; (5) Federal Rule of Civil Procedure 14; (6) declaratory relief; and (7) negligent misrepresentation. TPC ¶¶ 83-152.

## III. LEGAL STANDARD

The FAA governs the enforcement of arbitration agreements. 9 U.S.C. § 1 et seq. Section 2 of the FAA provides that any written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. Section 4 allows a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" to "petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

[4] Done Global claims that "to the extent that the Plaintiff M.H. [] claims liability against Done, its liability is secondary to and derivative of the primary liability of Meta." *Id.* ¶¶ 3-4. But only *one* of Plaintiff's claims against Done Global—CIPA—relies on a derivative theory of "aiding and abetting" liability. If Plaintiff prevails on its other, non-CIPA claims against Done Global, Meta would not and could not be liable, much less "primarily" so. In any event, Meta did not violate CIPA, including because (as even Plaintiff acknowledges), it specifically barred Done Global from sending it health or other sensitive information. *See, e.g.,* Dkt. 1 at ¶¶ 43-44.

The FAA "limits federal court review of arbitration agreements to two gateway arbitrability issues: '(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue.'" *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) (citation omitted). The Court must therefore "determine[] whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). The party seeking arbitration must prove the existence of an agreement by a preponderance of the evidence. *See Norcia v. Samsung Tele Commc'ns. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). If the movant party establishes an agreement, the party resisting arbitration must "prov[e] that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 91 (2000). Where a dispute is subject to arbitration, the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. On a motion to compel arbitration, a court must "consider all relevant admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 705 (9th Cir. 2024) (citation omitted).

## IV. DONE GLOBAL AGREED TO ARBITRATE THIS DISPUTE

### A. Done Global Agreed To The Arbitration Provision In The Commercial Terms

The first question this Court must decide before compelling arbitration is whether Done Global agreed to arbitrate in the first place. It indisputably did.

In answering this question, "federal courts apply state-law principles of contract formation." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476 (9th Cir. 2024). To form a contract under California law, "there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir 2023). Parties can show their assent through conduct (like signing up for an account or purchasing ads), so long as the party "intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents" to the agreement's terms. *Patrick*, 93 F.4th at 476 (citation omitted). These principles apply equally to online contracts: "if

a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance to those terms, an enforceable agreement can be formed." *Id.* An agreement can rest on inquiry notice of its terms if "(1) [a] website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* In addition, (3) a user who assents to online terms that incorporate by reference another set of online terms is bound by the incorporated terms too, so long as the incorporated terms are clearly called to the user's attention. *See In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019).

The Ninth Circuit has explicitly endorsed and upheld "'clickwrap' agreements, in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Berman v. Freedom Fin'l Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *see also Patrick*, 93 F.4th at 476. "Courts will find a valid agreement to arbitrate exists based on website clickwrap agreements without specific records of consent where '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Ireland-Gordy v. Tile, Inc.*, 760 F. Supp. 3d 946, 955 (N.D. Cal. 2024) (quoting *Berman*, 30 F.4th at 856).

These conditions are satisfied here. Done Global regularly purchased ads from Meta between November 19, 2019 and March 25, 2024. Duffey Decl. ¶ 18; *see also* Dkt. 1 ¶¶ 15, 35. Done Global manifested its assent to the Commercial Terms every time that it purchased ads from Meta: (1) the Commercial Terms were conspicuously hyperlinked at the point of purchase; and (2) advertisers were advised that by clicking a "Confirm" or "Publish" button to purchase ads they agreed to the Commercial Terms, which require arbitration of disputes. Duffey Decl. ¶¶ 20-22 & Exs. 6-10. By clicking these buttons, Done Global "unambiguously manifested" its assent to be bound by Meta's Commercial Terms, including its arbitration provision. *Oberstein*, 60 F.4th at 517. Indeed, the Ninth Circuit recently affirmed the enforcement of an arbitration agreement presented to users in an essentially identical manner. *See Patrick*, 93 F.4th at 474-75, 477, 481-

82 (arbitration agreement contained in terms of use accessible through hyperlink near button used to complete purchase, where website also indicated that submitting an order confirmed agreement).

Courts have readily found that an enforceable contract was formed on facts nearly identical to these, where a plaintiff elects to "creat[e] an account, sign[] into an account, [or] complet[e] a purchase" after being presented with language informing them that by clicking a button, they agree to be bound by the website's terms. *Oberstein*, 60 F.4th at 515-16 (affirming decision to compel arbitration based on website terms); *see also Morrison v. Yippee Ent., Inc.*, 2025 WL 2389424, at *1-2 (9th Cir. Aug. 18, 2025) (finding inquiry notice when terms were conspicuously presented to the user at sign-up and assent by user's choice to sign up); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 587 (N.D. Cal. 2020) (finding inquiry notice of DoorDash's terms based on a "plain reading" of the website sign-in page); *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 929-30 (N.D. Cal. 2024) (compelling arbitration where users of website manifested assent to website's terms of use and arbitration clause in sign-up wrap agreement, as described in declaration describing the sign-up flow); *Patrick*, 93 F.4th at 476 (same).

Similarly, courts have also consistently enforced Meta's Commercial Terms, including the arbitration provision, against businesses (like Done Global) who use Meta's products and services. *See, e.g.*, *McMahon v. Meta Platforms, Inc.*, 2023 WL 4546377, at *2-3 (W.D. Wash. July 14, 2023) (enforcing Commercial Terms to compel arbitration); *Lag Shot LLC v. Facebook, Inc.*, 545 F. Supp. 3d 770, 777-82 (N.D. Cal. 2021) (same); *Kangapoda Corp. v. Facebook, Inc.*, 2021 WL 11721658, at *1-5 (D.N.J. Dec. 13, 2021) (same). This Court should do the same.

### B. The Arbitration Agreement Encompasses Done Global's Claims

Done Global's claims against Meta also fall within the arbitration provision's broad scope.

The arbitration provision in the Commercial Terms applies to "Commercial Claims," defined as "any claim, cause of action, or dispute that arises out of or relates to any access or use of the Meta Products for business or commercial purposes." Ex. 6 § 5(b) (Mar. 6, 2024); *see also* Ex. 7 § 5(b) (Jan. 4, 2022); Ex 8 § 5(b) (Sept. 27, 2021); Ex. 9 § 5(b) (Aug. 31, 2020); Ex. 10 § 4(b) (May 25, 2018). Parties use this kind of broad language "when [they] intend to include a broad arbitration provision." *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir.

2011) (citation omitted); *see also Britton v. Co-op Banking Grp.*, 4 F.3d 742, 745 (9th Cir. 1993) ("relat[es] to" language "secure[s] the broadest possible arbitration coverage").

This dispute—about Done Global's use of the Meta Pixel—plainly falls within the parties' broad arbitration provision. Each of Done Global's claims against Meta "arise[] out of or relate[] to" Done Global's use of the Meta Pixel for its own "commercial or business purposes." Ex. 6 § 5(b). The Commercial Terms expressly specify that "using ads, selling products, developing apps, managing a Page, managing a Group for business purposes, or using our measurement services regardless of the entity type" is a "commercial or business purpose." *Id.* at 1. And that is exactly what is alleged here: Done Global seeks to hold Meta liable for Plaintiff's claims against Done Global, which allege that Done Global transmitted his personal information to Meta and other third parties through Done Global's integration of the Meta Pixel on its website for advertising purposes. *See* Dkt. 1 ¶¶ 1, 3, 15-16. Plaintiff alleges that Done Global is a telehealth provider and that Done Global's decision to embed the Pixel on its website allowed Done Global to "review a summary of users' activity," "impact the delivery of ads, measure cross-device conversions, create custom audiences" for advertising, and "save money on advertising and marketing costs." *Id.* ¶¶ 61, 64. Done Global filed the TPC against Meta, claiming that if Done Global is found liable for the unlawful transmission of data to Meta through the Meta Pixel, Meta is the "primarily" liable party. Following this "primary" liability theory, Done Global passes along the invasion of privacy and CIPA causes of action wholesale as asserted by Plaintiff and asserts causes of action seeking equitable indemnification and equitable contribution from Meta for any damages it could owe to Plaintiff. *See* TPC ¶¶ 98, 108, 122, 129. Done Global's remaining substantive claim, for negligent misrepresentation, arises from statements made in emails between Done Global and Meta about Pixel data that Done Global sent in potential violation of "Meta's terms and policies."[5] Each of these claims is inextricably tied to Done Global's use of the Meta

---

[5] Done Global's other purported causes of action for "Federal Rule of Civil Procedure 14" and declaratory relief likewise "arise from or relate to" Done Global's use of Meta products for commercial purposes. These claims are entirely duplicative of the equitable indemnification and equitable contribution claims, and thus (like those claims) arise out of or relate to Done Global's use of the Meta Pixel, to the extent they are cognizable at all.

Pixel and thus falls within the scope of disputes that the parties agreed to arbitrate. Accordingly, they must be arbitrated.

### C. Done Global's Third-Party Action And Requests for Arbitration-Related Discovery Must Be Stayed Pending Arbitration

The FAA requires courts to stay any action that is governed by a valid arbitration agreement "pending resolution of the arbitration." *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 832 (9th Cir. 2019) (citing 9 U.S.C. § 3). For the reasons set forth above, Done Global's third-party claims are subject to the arbitration agreement in Meta's Commercial Terms. The claims against Meta must therefore be stayed pending arbitration of those claims. *See, e.g.*, *Ugalde v. Syngenta Flowers, LLC*, 2025 WL 1828513, at *5 (N.D. Cal. July 1, 2025) (staying case after compelling arbitration).

Done Global's efforts to obtain discovery from Meta is improper, which has necessitated Meta's concurrently filed Motion to Stay. That motion details why discovery should be stayed in this matter. It bears restating here, however, that the Court can decide whether Done Global's third-party claims against Meta are subject to arbitration based on the agreements and consent flows that Meta has described above and filed in support of this Motion; Done Global has not and cannot identify any grounds suggesting it did not agree many times over to arbitrate its claims against Meta, and therefore, no arbitration-related discovery is warranted. *See, e.g.*, *Ghazizadeh*, 737 F. Supp. 3d at 937 (declining discovery into contract formation issues where the motion to compel arbitration could be determined on the record and such discovery "would not be useful to the court"); *Driskill v. Experian Info. Sols., Inc.*, 753 F. Supp. 3d 839 (N.D. Cal. 2024) (similar); *Loewen v. Lyft, Inc.*, 2015 WL 12780465, at *3-5 (N.D. Cal. June 12, 2015) (similar).

## V. CONCLUSION

For the reasons stated above, Meta respectfully requests that the Court compel Done Global to arbitrate their claims in accordance with the parties' arbitration agreement.

Dated: December 23, 2025

LATHAM & WATKINS LLP

By: /s/ Melanie M. Blunschi
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Francis J. Acott (Bar No. 331813)
*francis.acott@lw.com*

Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600
*Attorneys for Defendant*
*Meta Platforms, Inc.*